**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

OSAMA ELDEEB                                  :        CIVIL ACTION

               v.                             :

ALLIEDBARTON SECURITY SERVICES L.L.C.,
IMS HEALTH, INC., and VERA ADAMEK[1]          :        NO. 07-669

_____

**MEMORANDUM RE: SUMMARY JUDGMENT**

**Baylson, J.**                                        **August 28, 2008**

        Presently before this Court are Defendants' Motions for Summary Judgment.  After a

careful review of the record and all relevant case law, Defendants' Motions will be granted

**I.      Background**

        A.      Factual Background

        Osama Eldeeb (hereinafter "Plaintiff," "Mr. Eldeeb") was employed as a Security Officer

by AlliedBarton Security Services, LLC (hereinafter "AlliedBarton") beginning in June, 2003.

(AlliedBarton Statement of Facts ¶ 4, Pl. Statement of Facts ¶ 4).  AlliedBarton is a contract

security company that provides services and personnel to various companies.  (Id. at ¶ 1).

AlliedBarton provides its services to the IMS Health Building in Plymouth Meeting,

Pennsylvania (hereinafter "IMS"), pursuant to a contract between AlliedBarton and C.B. Richard

_____

        [1] In his Complaint, Plaintiff incorrectly identifies the defendants (naming them as
"Allied/Spectraguard Security," "IMS Health" and "Vera Ademek").  The Court relies on
Defendants' own briefings for their proper names.  (Allied Mem. in Support of Mot. for
Summary Judgment at 1; IMS Ans. at 1).

Ellis, Inc., formerly Insignia ESG (hereinafter "CBRE").  CBRE manages the IMS facility on

behalf of IMS Health.  (Id. at ¶ 2).  AlliedBarton Account Manager Frank Wilson (hereinafter

"Mr. Wilson") made the decision to hire Plaintiff as a Security Officer at the IMS facility.  (Id. at

¶ 5).  Jim Russell (hereinafter "Mr. Russell") served as his immediate supervisor.  (Pl.'s

Statement of Additional Material Facts at ¶ 8).

      Plaintiff was born in Egypt and practices the Islamic faith.  (Pl.'s Statement of Additional

Material Facts ¶ ¶ 1-2).  According to Plaintiff, the alleged harassment and discrimination began

in and around early 2004 and continued until he stopped working at IMS on July 29, 2004.

(Compl. ¶ ¶ 11, 15).  Mr. Eldeeb alleges that one unnamed IMS employee made a negative

reference to people in the Middle East, with the employee stating that he did not respect Muslims

for "killing people like that."  (Id.).  Plaintiff also alleges that Mr. Russell stated his name in a

"mocking manner" on several occasions.  (Id. at ¶ 2).  On a separate occasion, Plaintiff alleges

that Mr. Wilson approached Plaintiff at his work site on the day Sadaam Hussein was captured

and said they had "gotten one" and now needed to "get the other one."  (Id.)

      Mr. Eldeeb also asked to change his lunch time with that of another AlliedBarton

employee so that he could pray in accordance with his Islamic faith at the required time.

AlliedBarton offered Plaintiff a choice between the twelve o'clock lunchtime and the twelve-

thirty lunchtime.  Although it appears that Mr. Eldeeb preferred the one o'clock lunchtime,

Defendant AlliedBarton contends that the one o'clock lunchtime was held by a Security Officer

with more seniority than Plaintiff.  Mr. Eldeeb accepted the twelve-thirty lunchtime.  (Def.

AlliedBarton's Statement of Undisputed Facts, Pl.'s Resp. to Def. AliedBarton's Statement of

Undisputed Facts at ¶ ¶ 61-63).  Plaintiff contends that in accepting this lunch break, he

repeatedly had to miss one of his five daily prayers.  (Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 64).

The majority of alleged incidents occurred between Plaintiff and Vera Adamek (hereinafter "Ms. Adamek"), who was an employee at IMS.  In January 2004, Mr. Wilson introduced Plaintiff to Ms. Adamek.  Upon introduction, Ms. Adamek made a comment about Mr. Eldeeb's name.[2]  Ms. Adamek testified that she made this comment to Mr. Eldeeb out of concern that others might react negatively to the name "Osama."  (Def. AlliedBarton Mot. for Summ. J., Ex. F, pp. 22-23).  AlliedBarton alleges that Mr. Wilson spoke to Mr. Eldeeb and to Ms. Adamek about the situation, in order to alleviate any concerns and prevent future incidents. (Def. Allied Barton Statement of Undisputed Facts at ¶¶ 16-17).

For six months following their introduction, the only interaction between Mr. Eldeeb and Ms. Adamek occurred when she entered or left the IMS building.  This occurred fewer than twenty times in the six-month period.  (Def. Allied Barton Statement of Undisputed Facts at ¶ 18, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 18).  Ms. Adamek testified that during each of these interactions, she would state Plaintiff's first name and nod to him affirmatively.  (Id.).  Mr. Eldeeb contends that Ms. Adamek said his name "as if in distaste" while passing Plaintiff (Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 18).

On July 19, 2004, Ms. Adamek and her son approached Plaintiff at his post in the IMS

---

[2] There is some disagreement as to the substance of Ms. Adamek's comment.  Ms. Adamek contends that upon learning Plaintiff's name was "Osama," she stated "That's [a] very bad name" and "I think you should change it."  (Def. Allied Barton's Statement of Undisputed Facts at ¶ 14).  Plaintiff contends that Ms. Adamek told him that he "had to change" his name. (Pl.'s Resp. to Def. Allied Barton's Statement of Undisputed Facts at ¶ 14).  The Court must take the facts in the light most favorable to Plaintiff.

building and asked for a guest pass to allow her son to enter the building.  As she was receiving

the guest pass, Ms. Adamek introduced Plaintiff to her son, mistakenly identifying Mr. Eldeeb as

"Sadam" before stating, "Oh no, you're Osama."  (hereinafter "the July 19 incident").  (Def.

Allied Barton Statement of Undisputed Facts at ¶ 20, Pl.'s Resp. to Def. AliedBarton's Statement

of Undisputed Facts at ¶ 20).  During his next break, Mr. Eldeeb approached the Administrative

Assistant to a Vice-President of IMS, Christine Connover (hereinafter "Ms. Connover") and

recounted the conversation between himself and Ms. Adamek.  (Def. Allied Barton Statement of

Undisputed Facts at ¶ 23, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶

23).  On July 22, AlliedBarton's Human Resources Coordinator Troy Martzall (hereinafter "Mr.

Martzall") approached Plaintiff and explained AlliedBarton's conflict resolution policy, stating

that Mr. Eldeeb should have raised any concerns he had to AlliedBarton personnel rather than to

an IMS employee.  (Def. Allied Barton Statement of Undisputed Facts at ¶¶ 25-26, Pl.'s Resp. to

Def. AlliedBarton's Statement of Undisputed Facts at ¶¶ 25-26).  Mr. Martzall and Mr. Eldeeb

discussed a potential transfer, although Mr. Eldeeb stated that he would like to continue working

for Mr. Wilson, but would accept a transfer to another position if it was in AlliedBarton's best

interest.  (Id.).  Mr. Eldeeb continued to work at IMS after his meeting with Mr. Martzell (Id. at ¶

29).

On July 23, 2004, AlliedBarton Recruiter Rocky Owens (hereinafter "Mr. Owens")

contacted Plaintiff to inform him that the company was working on finding him another position.

(Id. at ¶ 30).  Plaintiff alleges that in this same conversation, Mr. Owens told him never to

complain again if someone made a discriminatory remark to him. (Pl.'s Resp. to Def.

AliedBarton's Statement of Undisputed Facts at ¶ 30).

On July 24 and 25, Defendant AlliedBarton alleges that CBRE Facilities Manager John Jerbasi (hereinafter "Mr. Jerbasi") observed Plaintiff sitting on the tailgate of his car for approximately two to three hours each day when Plaintiff should have been patrolling the building.  (Def. Allied Barton Statement of Undisputed Facts at ¶ 31).  Plaintiff denies that this occurred.  On July 26, Mr. Jerbasi reported Plaintiff's alleged behavior to Mr. Wilson and requested that Plaintiff be removed from his position at IMS.  (Def.'s Allied Barton Statement of Undisputed Facts at ¶ 32).  While Mr. Jerbasi denied knowing anything about discrimination against Mr. Eldeeb, Ms. Adamek recalled that she had discussed the July 19 incident with Mr. Jerbasi prior to July 24.  (Def. AlliedBarton's Mot. for Summ. J., Ex. B, at ¶ 7; Ex. F, pp. 46-49).

On July 28, 2004, Mr. Wilson instructed Mr. Eldeeb to go to headquarters the following day.  On July 29, Mr. Martzall met with Plaintiff and informed him that he had been removed from his position at IMS because he had been seen sitting on the tailgate of his vehicle during his work hours.  (Def.'s Allied Barton Statement of Undisputed Facts at ¶ 43).  On the same day, Plaintiff met with Mr. Owens, who said, "We are going to work with you and find you another facility and soon we will find something.  As soon as we find something we will call you."  (Def. Allied Barton Statement of Undisputed Facts at ¶ 44, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 44).  Plaintiff alleges that in this same conversation, Mr. Owens told him that if and when another position was found, if someone made any discriminatory remark to him, he was to "just take it" or ask for a day off.  (Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 44).  Neither Mr. Owens nor Mr. Martzall told Mr. Eldeeb that he was terminated.  (Def. Allied Barton Statement of Undisputed Facts at ¶ 45, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 45).

At some point, AlliedBarton offered Plaintiff a part-time position.[3]  Mr. Eldeeb never responded to this offer.  (Def. Allied Barton Statement of Undisputed Facts at ¶ 48, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 48).  In August, 2004, AliedBarton alleges it offered Plaintiff a full-time position which met Plaintiff's schedule and paid a higher salary than the one he received while at IMS.  (Def. Allied Barton's Statement of Undisputed Facts at ¶ 50).  Plaintiff did not take this position, as he did not trust AlliedBarton and has stated he would not have accepted any position from them.  (Def. Allied Barton's Statement of Undisputed Facts at ¶ 55, Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 55).

B.     Procedural History

Plaintiff filed a charge against AlliedBarton and IMS with the Pennsylvania Human Relations Commission relating to his employment with AlliedBarton after he was removed from IMS.  (Def.'s Statement at 57, Pl.'s Resp. at 57).  These charges were cross-filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), and Plaintiff received right to sue letters.  (Compl. at ¶ 6).

Plaintiff filed this Complaint on February 20, 2007 (Doc. No. 1).  Defendants filed Motions for Summary Judgment (Doc. Nos. 21, 22).  Plaintiff filed a Response to Defendants' motions (Doc. No. 25).  Defendants filed Reply briefs to Plaintiff's Response (Doc. Nos. 26, 27).

---

[3] Mr. Eldeeb and AlliedBarton disagree as to the date this position was offered, although both agree that it was offered.  AlliedBarton also contends that Plaintiff was offered the only position in the area that was available and met his scheduling requirements, and was offered this part-time position until a full-time position became available.  (Def.'s Allied Barton's Statement of Undisputed Facts at ¶ 47).  Mr. Eldeeb denies any knowledge of such facts.  (Pl.'s Resp. to Def. AliedBarton's Statement of Undisputed Facts at ¶ 47).

Upon the Court's request, Plaintiff filed a statement of undisputed facts (Doc. Nos. 29, 30, 31).

Defendants filed responses to these filings (Doc. Nos. 32, 33).  The Court initially scheduled oral

argument in this case, but upon further consideration of all issues, concluded that both parties'

briefings were sufficient and that oral argument was therefore unnecessary.

Plaintiff's complaint contains ten counts.  Counts One and Two allege violations of Title

VII by all Defendants due to a hostile work environment based on religion and national origin,

respectively.  Counts Three and Four allege violations of Title VII by Allied Barton due to

termination based on religion and national origin, respectively.  Counts Five and Six allege

violations of Title VII by AlliedBarton due to constructive discharge based on religion and

national origin, respectively.  Count Seven alleges a violation of Title VII by all Defendants due

to retaliation.  Counts Eight, Nine and Ten allege violations of the Pennsylvania Human

Relations Act by all Defendants based on religion, national origin and retaliation, respectively.

## II.    Parties' Contentions

### A.    Defendants' Motions for Summary Judgment

#### _____1,    *AlliedBarton*

AlliedBarton argues that it is entitled to summary judgment on Mr. Eldeeb's hostile work

environment claim because Plaintiff cannot establish that he was subjected to harassment based

on his national origin or religion.  AlliedBarton contends that Ms. Adamek's comments were not

severe or pervasive, a reasonable person would not be detrimentally affected by the conduct, and

that once AlliedBarton became aware of the alleged harassment, it took prompt remedial action.

With respect to Plaintiff's discrimination claim, AlliedBarton argues that Plaintiff has no direct

evidence of discrimination.  AlliedBarton contends that Plaintiff cannot establish a prima facie

case of discrimination based on either religion or national origin discrimination, Plaintiff cannot establish an adverse employment action because he was not terminated or constructively discharged, and Plaintiff cannot identify others of a different religion or national origin who were treated differently. AlliedBarton contends that it has a legitimate non-discriminatory reason for Plaintiff's treatment, and that Mr. Eldeeb has no evidence this reason was pretextual. With respect to Plaintiff's retaliation claim, AlliedBarton argues that Plaintiff cannot establish a prima facie case, as Plaintiff's complaint to IMS was not protected activity. AlliedBarton further argues that Plaintiff's alleged termination or constructive discharge were not adverse actions, that there is no causal connection between Plaintiff's alleged complaint and his removal from IMS, and that there is no causal connection between any of Plaintiff's alleged complaints and his failure to be reassigned. AlliedBarton states that it has a legitimate non-retaliatory reason for Plaintiff's removal from IMS, and that Mr. Eldeeb cannot show pretext. Finally, AlliedBarton argues that Plaintiff was not denied a religious accommodation.

      *2.*     *IMS Health/Vera Adamek*

IMS and Ms. Adamek (hereinafter "IMS defendants") argue that the Court should enter summary judgment against Plaintiff with respect to all Title VII claims because IMS had no employment relationship with Mr. Eldeeb and thus cannot be held liable under Title VII. IMS Defendants further argue that Ms. Adamek is an individual who cannot be held liable under Title VII. With respect to the PHRA claims, IMS Defendants contend that like Title VII, the PHRA does not authorize actions against individuals or actions against a non-employer defendant. IMS Defendants further argue that there is no evidence that IMS Defendants aided and abetted any alleged discrimination or retaliation by AlliedBarton against Mr. Eldeeb.

B.     Plaintiff's Response

In his response, Plaintiff contends that he has met the standard to establish a hostile work environment.  Mr. Eldeeb alleges that his requests for time to pray were denied, and that AlliedBarton and IMS employees did nothing to stop the intentional discrimination and harassment he experienced while at work.  Plaintiff alleges there is no evidence that any other person of any nationality or religion was treated similarly to him.  Plaintiff believes there was no performance error on his part at his job and contends that there is a rationale inference that all three defendants collaborated in a plot to remove Plaintiff from IMS with false accusations of misconduct.  Mr. Eldeeb contends that a reasonable person would be detrimentally affected by the work environment created by Defendants.  With respect to his disparate treatment claims, Plaintiff alleges he has established a prima facie case of discrimination, and that he has shown Defendants' reason for firing him to be pretextual.  Plaintiff argues that his "transfer" from IMS constituted an adverse action, as it was an indefinite suspension without pay and benefits and/or a demotion without pay and benefits.  Plaintiff further contends that he was constructively discharged in violation of Title VII, arguing that he was subjected to working conditions that were made so intolerable that a reasonable employee in his position would have resigned.  Plaintiff also contends that all defendants violated the PHRA, which uses the same legal standards as Title VII to determine discrimination complaints.

C.     Defendants' Reply Briefs

_____1.     *AlliedBarton*

In its reply, AlliedBarton contends that Plaintiff has failed to establish a viable hostile work environment claim, and that he introduces new evidence of allegedly hostile statements by

Mr. Wilson and Mr. Russell in his response.  Plaintiff contends these newly raised allegations should be disregarded.  AlliedBarton argues that Plaintiff has not established a claim of national origin or religious discrimination, as he fails to make a prima facie discrimination claim, he fails to refuse AlliedBarton's non-discriminatory reason for its actions, and he fails to establish any form of pretext.  AlliedBarton also contends that Plaintiff has failed to establish a claim of retaliation, as he fails to establish that he suffered from an adverse action, and fails to produce evidence of a causal connection between any complaints about harassment and his removal from IMS.

        *2.     IMS Defendants*

IMS Defendants argue that no dispute of material fact exists.  They further contend that there is no evidence that IMS Defendants aided or were involved in any employment action relating to Plaintiff.  They argue that there is no evidence that Ms. Adamek supervised Planitiff, and there is no evidence of an employment relationship.

### III.   Legal Standard

The burden-shifting analysis established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) is the appropriate analysis for summary judgment motions in cases alleging employment discrimination.  <u>Holness v. Penn State University</u>, No. 98-2484, 1999 U.S. Dist. LEXIS 6240, at *14 (E.D. Pa. May 5, 1999).  In order to establish a *prima facie* case of discrimination, the plaintiff must demonstrate the existence of four elements: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was either not hired or fired from that position; and (4) similarly situated nonmembers of the protected class were

treated more favorably than the plaintiff.  See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The defendant satisfies its burden of production by introducing evidence, which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  The defendant need not prove that the tendered reason actually motivated its behavior because the ultimate burden of proving intentional discrimination always rests with the plaintiff.  Id.

If the defendant is able to come forward with a legitimate, non-discriminatory reason for its action, the plaintiff can defeat a motion for summary judgment by proffering evidence from which a factfinder could reasonably either (1) disbelieve the defendant's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendant's action.  Id. at 764.  To discredit the defendant's proffered reason, the plaintiff cannot simply show that the defendant's decision was wrong or mistaken because the factual dispute at issue is whether discriminatory animus motivated the defendant's actions.  Id. at 765.  What is at issue is the perception of the decision maker, not the plaintiff's view of his own performance.  Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) (citations omitted); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509 (3d Cir. 1993), cert. denied, 510 U.S. 826, 114 S. Ct. 88, 126 L. Ed. 2d 56 (1993)

(pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important).

IV.    **Discussion**

    A.    <u>AlliedBarton Security Services</u>

       *1.    Hostile Work Environment*

Title VII and the PHRA make it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such an individual's race, color, religion, sex, or national origin.  <u>See</u> 42 U.S.C. § 2000e-2(a)(1) and 43 P.S. § 951.

In <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993), the Supreme Court clarified the elements of a discrimination claim resulting from a hostile work environment.  In order to fall within the purview of Title VII, the conduct in question must be severe and pervasive enough to create an "objectively hostile or abusive work environment - an environment that a reasonable person would find hostile - and an environment the victim-employee subjectively perceives as abusive or hostile."  <u>Harris</u> at 21-22.  In determining whether an environment is hostile or abusive, the Court must look at numerous factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance."  <u>Id.</u> at 23; <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir. 2001).

Plaintiff has not met his burden to show that the treatment he received while working for AlliedBarton at the IMS building amounted to discrimination.  The conduct he alleges - that he did not receive his first choice for a lunchtime shift and that Ms. Adamek said his name in a

demeaning way fewer than twenty times and mis-introduced him once - amounts to neither severe nor pervasive conduct.  In Page v. Trustees of the Univ. of Pa., 222 F.Appx. 144, 146 (3d Cir. 2007), plaintiff brought a hostile work environment claim concerning the "tone" of her employer's comments.  The Third Circuit found that the plaintiff alleged no comments that "without her testimony as to tone and manner, could be taken as derogatory, unprofessional, or motivated by animus . . . ."  Id. at 146.  In the present case, Ms. Adamek's greeting Plaintiff by name on a handful of occasions cannot be taken as derogatory or unprofessional.  Indeed, greeting him by his own name is professional, or at worst, innocuous behavior.

This may have been a different case if Plaintiff had been called "Osama" while at work and it was not his given name.  See Omari v. Waste Gas Fabricating Co., Inc., 2005 WL 545294, *12 (E.D.Pa. Mar. 4, 2005) (finding a hostile work environment when Plaintiff was called "Osama" by coworkers when his given name was Hocine).  But calling Plaintiff by his own true name is simply not a cause for a viable harassment claim.  The standard is an objective one in order to protect employers from the "hypersensitive" plaintiff.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir. 1990) ("The objective standard protects the employer from the 'hypersensitive' employee, but still serves the goal of equal opportunity by removing the walls of discrimination . . . .").

As such, AlliedBarton is entitled to summary judgment on Plaintiff's hostile work environment claim.

### 2.    *Termination/Constructive Discharge*

To establish a prima facie case of discriminatory termination or constructive discharge under Title VII or the PHRA, a plaintiff must show that (1) he is a member of a protected class;

(2) he was qualified for the position he held; (3) he suffered an adverse employment action; and

(4) "circumstances [] give rise to an inference of unlawful discrimination such as might occur

when the position is filled by a person not of the protected class." Jones v. School Dist. of

Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).

For the purpose of this motion only, AlliedBarton does not dispute that Plaintiff can

establish the first and second prong of his prima facie case. AlliedBarton contends that

Plaintiff's claim fails because Mr. Eldeeb cannot establish the third or fourth elements of his

prima facie case.

Simply put, there is no evidence that Plaintiff suffered any adverse action. No one ever

told Plaintiff that he was terminated. (Def. Allied Barton Statement of Undisputed Facts at ¶ 45;

Pl.'s Resp. to Def. AlliedBarton's Statement of Undisputed Facts at ¶ 45). Indeed, Plaintiff

admits that Mr. Owens told him, "We are going to work with you and find you another facility

and soon we will find something. As soon as we find something we will call you." (Def. Allied

Barton Statement of Undisputed Facts at ¶ 44; Pl.'s Resp. to Def. AlliedBarton's Statement of

Undisputed Facts at ¶ 44). While they disagree on the date of the offering, both Plaintiff and

Defendant AlliedBarton agree that AlliedBarton offered Mr. Eldeeb another position and Mr.

Eldeeb never responded. (Def. Allied Barton Statement of Undisputed Facts at ¶ 48; Pl.'s Resp.

to Def. AlliedBarton's Statement of Undisputed Facts at ¶ 48). Plaintiff stated in his deposition,

and admitted in his Response to Defendant's Statement of Undisputed Facts, that after being

removed from the IMS facility, Mr. Eldeeb did not trust AlliedBarton and would not have

accepted any position from the company. (Def. Aliled Barton's Mot. for Summary Judg., Ex. C,

pp. 102-103; Def. Allied Barton Statement of Undisputed Facts at ¶ 55; Pl.'s Resp. to Def.

AlliedBarton's Statement of Undisputed Facts at ¶ 55).  It was and is Plaintiff's prerogative to reject employment from AlliedBarton; he was under no obligation to accept the position.  But the fact that it is undisputed that a position was offered and that Plaintiff rejected it of his own accord shows that he was not terminated from his employment.

A plaintiff who voluntarily leaves his employment may make a case of constructive discharge if "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign."  Goss. v. Exxon Office Systems Co., 747 F.2d 885, 887-88 (3d Cir. 1984).  This is not the case here.  The conduct complained of (which this Court discussed above as innocuous) was almost entirely committed by Ms. Adamek and occurred at the IMS facility.  As Mr. Eldeeb was going to be transferred from the IMS facility to a new position, he would not have encountered Ms. Adamek or any other IMS employees at his new job.  A reasonable person in his shoes would not have predicted his new job to be so unpleasant or difficult that he would have resigned.

The fourth prong is also problematic for Plaintiff.  To make his prima facie case, a plaintiff must show that similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of the plaintiff's termination give rise to an inference of discrimination.  Clinkscales v. Children's Hosp. of Philadelphia, 2007 WL 3355604, *4 (E.D. Pa. Nov. 9, 2007) (internal citations omitted).  Plaintiff has offered no evidence that AlliedBarton treated him any differently than the company treats other non-Egyptian, non-Muslim employees.  In his Response, Plaintiff alleges that there is no evidence that any other person of any nationality or religion was treated similarly to him.  But Plaintiff

misunderstands his burden.  It is not Defendant's burden to show evidence that others were treated similarly to him; it is Plaintiff's burden to show that others who are similarly situated but who are not members of the protected class were treated more favorably.  Id.  While Plaintiff argues that he was treated dissimilarly and disfavorably than persons outside of his protected classes, he offers nothing to support this contention.  Plaintiff has failed to meet his burden, and thus summary judgment must be granted in favor of AlliedBarton on these claims.

### 3.   Retaliation

In order to state a claim of retaliation, Plaintiff must demonstrate: (1) he engaged in activity protected by Title VII; (2) he was subjected to an action by his employer that was materially adverse; and (3) the materially adverse action by the employer was causally related to his protected activity.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995); Ascolese v. SEPTA, 2008 WL 2165102 (E.D.Pa. 2008).  An employer's action is considered materially adverse if it would dissuade a reasonable person from making or supporting a charge of discrimination.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Once the prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action in question.  Quiroga v. Hasbro Inc., 934 F.2d 497, 501 (3d Cir. 1991), cert denied 502 U.S. 940 (1991).  The plaintiff must then demonstrate that the employer's explanation is pretextual.  Waddell v. Small Tube Prods. Inc., 799 F.2d 69, 73 (3d Cir. 1986).

Plaintiff's retaliation claims are also reviewed under the McDonnell-Douglas standard, as he is proceeding under a pretext theory.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  In order to state a claim of retaliation, Plaintiff must demonstrate: (1) he engaged in

activity protected by Title VII; (2) he was subjected to an action by his employer that was materially adverse; and (3) the materially adverse action by the employer was causally related to his protected activity.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995); Ascolese v. SEPTA, 2008 WL 2165102 (E.D.Pa. 2008).  An employer's action is considered materially adverse if it would dissuade a reasonable person from making or supporting a charge of discrimination.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Once the prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action in question.  Quiroga v. Hasbro Inc., 934 F.2d 497, 501 (3d Cir. 1991), cert denied 502 U.S. 940 (1991).  The plaintiff must then demonstrate that the employer's explanation is pretextual.  Waddell v. Small Tube Prods. Inc., 799 F.2d 69, 73 (3d Cir. 1986).

Protected activities under the ADA generally include (1) opposition to a practice made unlawful under the ADA; and (2) participation in an ADA investigation, proceeding, or hearing by making a charge, testifying, or otherwise assisting in the investigation.  See 42 U.S.C. 12203(a); Merit v. Southeastern Pa. Transp. Auth., 315 F.Supp.2d 689, 704 (E.D.Pa. 2004).  Informal charges or complaints of discrimination, as well as informal requests for accommodation, are sufficient to constitute protected activities for establishing a prime facie case of retaliation.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-2 (3d Cir. 1995); Kaniuka v. Good Shepherd Home, 2006 WL 2380387, *9 (E.D.Pa. Aug. 15, 2006).

Assuming that Plaintiff's activities are protected under the ADA, Plaintiff fails to meet prongs two and three.  As discussed above, there is no evidence that Plaintiff suffered any adverse action.  Furthermore, even if AlliedBarton's removal of Plaintiff from the IMS facility

were a materially adverse action, there is no evidence that the adverse action was causally related

to his protected activity.  While a plaintiff can demonstrate a causal connection by showing

temporal proximity between the protected activity and the adverse employment action, the timing

of the allegedly retaliatory action must be "very close" or "unusually suggestive" of retaliatory

motive before a causal link will be inferred.  Merit v. Southeastern Pennsylvania Transit

Authority, 315 F.Supp.2d 689, 707 (E.D.Pa. 2004) (internal citations omitted).  While the

amount of time between Mr. Eldeeb's complaint and his removal from the IMS facility is noted

by the Court, it is simply not suggestive enough to infer a causal connection.  The Court is even

more convinced of this fact because it is undisputed that AlliedBarton offered Plaintiff another

position with the company.

As such, summary judgment will be granted with respect to Plaintiff's retaliation claims

against AlliedBarton.

> 4.   *PHRA claims*

The analysis under Title VII and the PHRA are identical, as Pennsylvania courts have

construed the protections of the two acts interchangeably.  Weston v. Pennsylvania, 251 F.3d

420, 426 n.3 (3d Cir. 2001).  As explained above, summary judgment will be granted with

respect to Plaintiff's Title VII claims against AlliedBarton.  That analysis applies with equal

force to Plaintiff's PHRA claim.  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

As such, summary judgment will be granted with respect to Plaintiff's PHRA claims against

AlliedBarton.

> B.   IMS Health, Inc.

> 1.   *Title VII Claims*

The threshhold question in considering liability under a Title VII analysis is whether the defendant is the plaintiff's employer.  Rodriguez v. Lauren, 77 F.Supp.2d 643, 646 (E.D.Pa. 1999); Cameron v. Infoconsulting Intern., Inc., 2006 WL 1450842, *6 (E.D.Pa. May 23, 2006). Section 954(b) defines the term "employer," although its definition does not provide much guidance in determining whether a company in the position of IMS would be considered an employer of Mr. Eldeeb.  As noted in Cameron, the Supreme Court has adopted traditional agency law criteria "in interpreting the meaning of 'employer' in a statute that does not helpfully define it.'" Cameron at *5, citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992).  Among other factors relevant to this inquiry are the hiring party's right to control the manner and means by which the product is accomplished, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the tax treatment of the hired party, and the method of payment and provision of employee benefits.  Id.

In the present case, Mr. Eldeeb was hired and employed by AliledBarton.  It was an AlliedBarton Account Manager, Mr. Wilson, who made the decision to hire Plaintiff as a Security Officer at the IMS facility.  Mr. Eldeeb testified that he was not compensated by IMS or provided insurance or any other benefits by IMS.  (IMS Defs. Mot. for Summ. J., Ex. E, pp. 151-52).  AlliedBarton was responsible for the payment of Mr. Eldeeb's paycheck and for withholding money for tax purposes.  (Id. at 44, 152).  Simply because IMS asked for Mr. Eldeeb to be transferred does not establish that IMS was Mr. Eldeeb's employer.  See Cimino v. Borough of Dunmore, 2005 WL 3488419, *8 n.4 (M.D.Pa. Dec. 21, 2005).  (determining that the relevant inquiry in a similar situation was not whether a company had input into a termination,

but rather whether it could actually terminate the employment in question).  And while it may be true that IMS asked for Mr. Eldeeb's removal from his position at IMS, IMS had to make such a request through AlliedBarton, as IMS had no power to remove Mr. Eldeeb itself.

As such, it is clear to this Court that IMS was not Mr. Eldeeb's employer, and thus cannot be held liable under Title VII.

2.      *PHRA Claims*

As noted above, the PHRA is applied in accordance with Title VII.  <u>Davis v. Sheraton Society Hill Hotel</u>, 907 F.Supp. 896, 899 n.1 (E.D.Pa. 1995).  Like Title VII, the definition of an employer under the PHRA cannot be construed to include "employees;" indeed, "employee" is separately defined as a different term under the Act.  <u>See</u> 43 Pa. Cons. Stat. Ann. 954(b), (c).  Section 955(a) of the PHRA declares that only an "employer" may be held liable.  As IMS is not Mr. Eldeeb's employer, it cannot be held liable under this section.

A different section of the PHRA, however, contemplates liability that extends beyond that of Title VII.  Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ."  43 Pa. Cons. Stat. Ann. 955(e); <u>Dici v. Com. of Pa.</u>, 91 F.3d 542, 552-53 (3d Cir. 1996).  IMS qualifies under Section 955(e); thus, the remaining question is whether IMS may have aided and abetted the unlawful discriminatory practices of Mr. Eldeeb's employer.

Non-employers, such as IMS, cannot violate PHRA Section 955(e) when there is no corresponding Section 955(a) violation by an employer to aid and abet.  <u>See</u> <u>Kaniuka v. Good Shepherd Home</u>, 2006 WL 2380387, *10 (E.D. Pa. Aug. 15, 2006).   As stated above, this Court

-20-

will grant summary judgment on Plaintiff's claims of unlawful discrimination and retaliation in violation of the PHRA as to Defendant employer AlliedBarton, and therefore defendant IMS cannot be liable for aiding and abetting any allegedly discriminatory practices of Plaintiff's employer.

As such, summary judgment will be granted with respect to Plaintiff's PHRA claims against Defendant IMS.

### C.  Vera Adamek

#### 1.  Title VII Claims

Title VII does not authorize actions against individuals.  Sheridan v. E.I. Dupont de Nemours, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (concluding that "Congress did not intend to hold individual employees liable under Title VII); see also Foxworth v. Pennsylvania State Police, 2005 WL 840374, *4 (E.D.Pa. Apr. 11, 2005).  Plaintiff admits that Ms. Adamek was an employee of IMS and that she did not supervise Mr. Eldeeb.  (Pl's Resp. to IMS Defs Statement of Facts at 26, 33).  Although Mr. Eldeeb alleges that Ms. Adamek had a "working relationship" with AlliedBarton, there is no evidence to support a Title VII claim to proceed against her.  As the only proper defendant in a Title VII case is the employer and Ms. Adamek is an individual, summary judgment will be granted on Counts One, Two and Seven with respect to Ms. Adamek.

#### 2.  PHRA Claims

Just as IMS is not Mr. Eldeeb's employer, as decided above, Ms. Adamek cannot be held liable under this section.

As  noted above, non-employers, such as Ms. Adamek, cannot violate PHRA Section 955(e) when there is no corresponding Section 955(a) violation by an employer to aid and abet.

As this Court has found AlliedBarton to have committed no such violation, Ms. Adamek cannot be liable for aiding and abetting any allegedly discriminatory practices of Plaintiff's employer.

As such, this Court will grant summary judgment with respect to the PHRA claims against Ms. Adamek.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


OSAMA ELDEEB                                    :        CIVIL ACTION


                    v.                          :


ALLIEDBARTON SECURITY SERVICES L.L.C.,
IMS HEALTH, INC., and VERA ADAMEK              :        NO. 07-669
_____

ORDER

AND NOW, this 28th day of August, 2008, upon careful review of the motions and

briefings, it is hereby ORDERED that Defendant AlliedBarton's Motion for Summary Judgment

(Doc. No. 22) is GRANTED, and Defendants IMS Health, Inc. and Vera Adamek's Motion for

Summary Judgment (Doc. No. 21) is GRANTED.  The clerk shall close the case.


                                        BY THE COURT:

                                        /s Michael M. Baylson

                                        _____

                                        Michael M. Baylson, U.S.D.J.


O:\Clare\Eldeeb v. AlliedSpectraguard 07-669\Eldeeb Motion for Summary Judgment.wpd